UNITED STATES NATIONAL BANK OF SUPERIOR, WISCONSIN, a Corporation, Appellant, v. JAMES McCABE, Leslie Stinson, and Carl C. Gowran, Testamentary Administrator of the Estate of S. S. Titus, Deceased. JAMES McCABE, Respondent.

(222 N. W. 474.)

Opinion filed December 17, 1928.

*McIntyre, Burtness, & Robbins,* for appellant.

458

*George A. Bangs,* for respondent.

Burr, J. This action was brought to recover the amount claimed to be due to the plaintiff on a certain demand promissory note for $11,000 and interest, dated January 26, 1920, executed by the defendant James McCabe and two others. During the pendency of the action such settlement was made whereby the action was dismissed as to the defendants other than McCabe. The defendant McCabe answered setting up that the note had been executed solely for the accommodation of the plaintiff and that the settlement made with the other defendants discharged all liability on the part of McCabe. The issues involved, as stated by the appellant, are as follows:

(a) Was the note in suit executed by McCabe and his co-makers solely for the accommodation of the plaintiff bank?

(b) Was the defendant, James McCabe, relieved and discharged from all liability on the note by reason of the settlement made between plaintiff and the other defendants?

A jury was waived and the action tried to the court. The court found that the note had been executed and delivered by the defendant and his codefendants "for the accommodation of the plaintiff" and also that the defendant "was released from liability upon said note because of the settlement made with codefendants." Judgment was entered in favor of the defendant and the plaintiff appeals.

The respondent claims that the specifications of error are insufficient to raise the question of the sufficiency of the evidence; that "there is no specification of the particulars wherein the evidence is insufficient to support the findings." The appellant moves for leave to amend his specifications of error to set forth in detail the particulars wherein the evidence is claimed to be insufficient. We need not determine whether this may be done at this stage of the record as there is enough before us now to dispose of the case.

This being a jury case, though tried to the court without a jury, it is not triable de novo in this court on appeal for "a trial de novo cannot be had in the supreme court in an action properly triable to a jury, even though a jury was waived and the case tried to the court." Novak v. Lovin, 33 N. D. 424, 157 N. W. 297. Where a jury action is tried

to the court "the findings of the trial court are presumed to be correct unless clearly opposed to the preponderance of the evidence." McCormick v. Union Farmers State Bank, 48 N. D. 834, 839, 187 N. W. 421, and cases cited.

In the case at bar the defendant testified that the note was executed for the accommodation of the plaintiff bank. It appears the original indebtedness was incurred by a corporation known as the Stinson Tractor Company and the company was indebted to the plaintiff in approximately the sum of $35,000, which amount was some $11,000 in excess of the limit prescribed by the Federal statutes. The defendant, with one Titus and one Stinson, all directors of the company, signed a note representing this $11,000 and a renewal was given, being the note in suit. There is evidence which would tend to show the note was given to aid the company. The company was heavily indebted to the bank and the bank officials claimed they required the directors to assume part of the debt. The defendant admitted on cross-examination that he had indorsed the $24,000 note for the company and had guaranteed what were known as the Martin-Phillips notes, being notes which the company had turned over to the bank as collateral.

On his own behalf the defendant testified that the plaintiff, at the first time he had any dealings with its officers regarding this indebtedness, "wanted a Stinson Tractor Company note for the amount which they claimed at that time was twenty-four thousand dollars and they wanted an individual note for eleven thousand dollars;" that the bank "claimed it was another loan of the company and they would not be allowed to carry it under the Federal law" and so they called upon the directors "to give them a note for eleven thousand dollars, which would be an accommodation to the bank, and that the Stinson Tractor Company held plenty of collateral there to guarantee it, and as the collateral was collected they would take care of the note." He testified that never to his knowledge was any of the collateral held by the bank surrendered to them for the giving of this note; that it was all held by the bank and that it was the agreement the bank was to retain the collateral. He claimed he never received any of the notes from the bank nor any notice regarding the notes; that no claim was made on him to pay any of the notes or anything on this note until the winter of 1921–22. He stated that the cashier told him the bank was carrying

the obligations of the Stinson Tractor Company; that it constituted an over loan and "so as to put it in shape so it would pass the examiner in the bank the bank wanted a note of the Stinson Tractor Company for twenty-four thousand dollars and an individual note of eleven thousand dollars." He testified further "when they made the proposition of taking up the indebtedness of the company, the thirty-five thousand dollars, and making it into two notes, because of the Federal Banking Law, they told us, at that time, we were not liable on the eleven thousand dollar note. It was done merely to carry it along so that they could get by with it. They were perfectly satisfied with the Stinson Tractor Company's credit and it would look to them for the collection of the paper." The defendant on cross-examination in answer to the question "whatever you did you did for the welfare and promotion of the company, and for the welfare of the company, I take it, when you signed obligations for the company? said, "Well, yes, I would say so." Leslie Stinson was another director of the company who signed this note. He testified that at the time of the giving of the first note for which the note in suit is a renewal, the bank "mentioned the fact that they were not complaining about the obligation; that they were satisfied with it, but that they could not carry it in the shape it was in. They mentioned their limit was so much, and they mentioned it and they wanted this put in such shape, really to accommodate them, if we could put it in shape, so that the examiner could not find fault with them—and they suggested that we give a Stinson Tractor Company note for twenty-four thousand dollars, and our note for eleven thousand dollars to accommodate them. That was their statement to us." He stated further that whatever security the bank had for the indebtedness was kept by them and "there was no talk of delivering any to us."

This court has held in the case of Anamoose Nat. Bank v. Dockter, 56 N. D. 33, 216 N. W. 206, that "notes made payable to a bank for the sole purpose of deceiving the bank examiner are for the accommodation of the bank, without consideration, and the bank as a going concern cannot recover thereon."

The lower court in passing upon the testimony found the statements of the defendant and the other witnesses who testified to the accommodation character of the note to be true. This finding is certainly not

462

against the preponderance of the evidence. We need not pass on the issue of release. The note having been made for the accommodation of the bank and the bank being a going concern it cannot recover thereon, therefore the judgment of the lower court is affirmed with costs and it is so ordered.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.